IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROOSEVELT LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:11cv568-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

**I.   INTRODUCTION**

Plaintiff, Roosevelt Love, applied for Title II disability insurance benefits. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from the alleged onset date, through the date last insured. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-nine years old on the date last insured and had a ninth grade education. Tr. 27. Plaintiff had past relevant work experience as a: bottle machine operator, industrial maintenance repairer, and filling machine operator. Tr. 26 & 27. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged "in substantial gainful activity since the alleged onset date of January 1, 2006 through his date last insured of June 30, 2009." (Step 1) Tr. 13. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "Type II diabetes mellitus, peripheral neuropathy, hypertension, bilateral cataracts, and left kidney stone." Tr. 16. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Step 3) *Id*. Next, the ALJ found that Plaintiff "had the residual functional capacity to perform a restricted range of medium work" with several restrictions. Tr. 17. After consulting with a vocational expert, the ALJ found that Plaintiff was able to perform his past relevant work through the date last insured. (Step 4) Tr. 26. Despite his findings at Step 4, the ALJ proceeded to Step 5 and found that, "[c]onsidering the claimant's age, education, work experience, and [RFC]," and after again consulting with a vocational expert, there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the date last insured. Tr. 27. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . at any time from January 1, 2006, . . . through June 30, 2009." *Id*.

## IV. DISCUSSION

Plaintiff's single claim is that the "ALJ erred by not providing an adequate, well founded, basis for according little weight to the opinions of a treating physician." Pl.'s Brief (Doc. #14) at 5.  The treating physician to which Plaintiff refers, is Dr. Ogunbi. Plaintiff argues that the ALJ "did not articulate an adequate basis for not according the opinions of Dr. Ogunbi substantial weight" and "inferred additional opinions that were not stated by Dr. Ogunbi," which resulted in the ALJ "making an assessment of the content and import of the treating physician's statements, [] improperly dr[awing] his own medical conclusions from the evidence of record, [and] substituting his own medical opinions for those of the treating physician." *Id*. at 3-4.  To this, the Commissioner argues that the ALJ did articulate an adequate basis for giving Dr. Ogunbi's opinion little weight and that Plaintiff suffers from a "fundamental misunderstanding of Social Security regulations and Eleventh Circuit case law" because it is the ALJ's duty to determine the RFC, which is made up of an evaluation of all medical and relevant evidence of record.  *See* Def.'s Brief (Doc. #16) at 8-13.

As to the issue of whether the ALJ articulated an adequate basis for the rejection of Dr. Ogunbi's opinion, it can hardly be said that the ALJ did not articulate *a* reason.  Indeed, the ALJ devoted a significant amount of time detailing his basis for rejecting the opinion. *See* Tr. 24-25. Thus, the ALJ satisfied the requirement that he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician . . ." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053

6

(11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight"). The question then becomes whether the basis he articulated was adequate.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Bliss v. Comm'r of Soc. Sec.*, 254 F. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Here, the ALJ articulated several bases for the rejection of Dr. Ogunbi's opinion. On July 29, 2010 and October 8, 2010, Dr. Ogunbi authored letters describing various limitations of Plaintiff's ability to perform work based on his diabetes and hypertension. In referring to those letters, the ALJ stated that "there are no treatment notes or objective evidence or laboratory findings" to support the opinions. Tr. 24. Plaintiff fails to point this court to any "treatment notes or objective evidence or laboratory findings" to show that this basis was inaccurate.

The ALJ also stated that he accorded Dr. Ogunbi's opinion little weight, because his

treatment notes are inconsistent with the limitations based on diabetes and hypertension as articulated in the opinions. Specifically, the ALJ points out that the treatment notes show that Plaintiff reported that he had been "tolerating his medications well" and reported no problems with his diabetes, and Dr. Ogunbi's "assessment on each of these occasions was benign essential hypertension and stable control of diabetes . . . ." Tr. 24-25.

The ALJ also stated that "even if [he] were to accept Dr. Ogunbi's opinion, he stated that the claimant could perform light work as of August 2, 2009, and prior to that date, even he would give a higher residual functional capacity." Tr. 25. It is here, at this point in the ALJ's opinion, that Plaintiff specifically points to an alleged error in the ALJ's rejection of Dr. Ogunbi's opinion. Plaintiff argues that the ALJ's inference that Dr. Ogunbi would have given a higher RFC for the period prior to August 2009 was improper, because such an opinion was not stated in the record. The Commissioner argues that Dr. Ogunbi could not have found the limitations for light work prior to the alleged onset date through the date last insured date, because "he did not diagnose Plaintiff with peripheral neuropathy until November 2009 (about four months after Plaintiff's June 30, 2009 date last insured), and his treatment notes do not reflect findings of reduced strength until March 2010 (almost a year after Plaintiff's date last insured) (Tr. 25; *compare* Tr. 379 *with* Tr. 355, 358)." Def.'s Brief. (Doc. #16) at 10-11. The court agrees with the Commissioner, but that is not really important, because the argument is moot where the court agrees with the ALJ's rejection of Dr. Ogunbi's opinion. Plaintiff is arguing against an alternative basis for the ALJ's findings.

The ALJ rejected Dr. Ogunbi's opinions outright, then as an aside, noted that "even if" he were to accept the opinions, Dr. Ogunbi's assessment of Plaintiff during the relevant period would have been higher than light work.[5] Whether that inference was accurate is not important where the ALJ articulated good cause to reject the doctor's opinion as a whole. More importantly, the ALJ's basis for rejecting here, that Dr. Ogunbi's treatment notes are inconsistent with the opinions, is correct and constitutes good cause.

Moreover, the ALJ also rejected Dr. Ogunbi's opinion because it was inconsistent with the other medical evidence of record. The ALJ sets forth his reasons for this statement, in a juxtapositional paragraph, with the opinions of doctors Ogunbi, Golomb, and Evans. Tr. 25. Plaintiff makes no specific argument against this basis, other than to generally say that the ALJ made improper inferences. *See* Pl.'s Brief (Doc. #14) at 5. The court will decline to suppose Plaintiff's arguments here.

Instead, the court has completed its review of the ALJ's opinion and his clearly articulated reasons, in which he provided "good cause," for rejecting the opinion of Dr. Ogunbi, and finds that rejection to be supported by substantial evidence. "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc.*

---

[5] To indulge in its own aside, the court notes that Dr. Ogunbi did not opine that Plaintiff was disabled.

*Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

As to Plaintiff's argument that the ALJ erred by "substituting his own medical opinions" for those of the treating physician, the court finds this argument to be without merit. The ALJ evaluated the medical record of evidence and made the RFC determination, and that determination is supported by substantial evidence. The ALJ's rejection of Dr. Ogunbi's opinion was not based on the ALJ's medical opinions, but on those expressed by Dr. Ogunbi's treatment notes as well as those expressed by doctors Golomb and Evans, as well as other medical evidence of record.

## V.  CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 31st day of May, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE